R. W. ZICKEFOOSE, APPELLANT, v. WALKER AND WILLIAMS AND HARTFORD ACCIDENT & INDEMNITY CO., APPELLANTS.—79 S. W. (2d) 511.

Springfield Court of Appeals. March 4, 1935.

*Phillips & Phillips* and *David W. Hill* for appellant, employee.

*Henson & Woody* for appellant, employer and insurer.

364

BAILEY, J.—This is an appeal by all parties concerned from a judgment of the circuit court reversing an award made by the Workmen's Compensation Commission and in remanding the cause to the said commission for a rehearing. The claimant, R. W. Zickefoose, was, on August 5, 1929, in the employ of Walker and Williams and at that time engaged in roofing a building in Poplar Bluff, Missouri; both claimant and employer were carrying on said work under the provisions of the Workmen's Compensation Act. The Hartford Accident & Indemnity Company was the insurer of said employer. Claimant suffered an injury from an accident arising out of and in the course of his said employment on the date above mentioned. He was paid compensation at the rate of $20 per week from the date of his injury until October 2, 1933, or a total sum of $4340. It was agreed that the claimant's weekly wage was $35. It further appears that after due notice to all parties concerned, a hearing was had before referee Spencer H. Givens, on October 11, 1933, upon the sole question of the nature and extent of employee's disability. On the 17th of October, 1933, Referee Givens made his finding and award to the effect that said employee was permanently disabled to the extent of sixty-five per cent loss of the use of his back; that he was entitled to compensation for 260 weeks at the rate of $20 per week or a total of $5200; that the amount of said compensation paid to that date by the employer or insurer was $4340, leaving a balance due the employee in the sum of $860. Thereafter, both the employee and the employer filed an application for review by the whole commission and on October 28th, after due hearing, the award of the referee was affirmed. The employee, referred to herein as claimant, thereafter appealed to the circuit court from said final award. A complete transcript of all the record and evidence taken before the commission was filed with the circuit court; and a hearing of said appeal was had on April 27, 1934, resulting, as heretofore stated,

in an order reversing the commission and remanding the cause, which order was based upon certain grounds stated therein, as follows:

"1. Because there is no substantial evidence to sustain the finding of said commission that plaintiff was only partially disabled from returning to any employment on account of his physical injuries.

"2. Because all the competent evidence in the case shows that plaintiff was and is permanently and totally disabled from returning to any employment on account of his physical injuries.

"3. Because the testimony of all the physicians is so indefinite as to be valueless, on the question of disability.

"4. Because the final award was the result of fraud shown by the evidence; the plaintiff was told by the commissioner who took the testimony that the plaintiff did not need an attorney to represent him in this case; that plaintiff relied upon the advice of the commissioner, and the result was that incompetent testimony was permitted to be given in the case against plaintiff."

The appeals of all parties are now lodged in this court.

We shall first consider the appeal of claimant. It is urged that the trial court erred in remanding the cause to the commission for rehearing when, it is said, all the evidence, which is uncontradicted, authorized the court, not only to set aside the award of the commission, but to modify the award, and grant to claimant compensation based upon permanent total disability. It is further urged that the award made was procured by fraud for the reason that the referee informed claimant, before the first hearing, that he did not require the services of a lawyer and for that reason, claimant, having relied upon that statement, was not represented at the hearing by attorney and as a result incompetent evidence was introduced.

At the trial in the circuit court claimant was permitted to introduce evidence for the purpose of attempting to prove that the award of the commission was procured by fraud. This evidence was to the effect that the commissioner or referee before whom claimant's case was first heard, informed him that he, "wouldn't need any lawyer;" that he took his word for it and did not get a lawyer until two days before his time ran out for appeal, when he consulted the lawyers who now represent him; that claimant was not a lawyer and was not qualified to know about, "questions that were asked the doctors as to whether or not you could do light work."

The charge of fraud is, we think without reasonable foundation. The statement attributed to one of the commissioners that claimant would not need a lawyer is in point of fact not a mis-statement. Under the law proceedings before the commission are required to be, "simple, informal and summary, and without regard to the technical rules of evidence, etc." [Sec. 3349, R. S. Mo. 1929.] This of course does not mean that the award of the commission may be based upon incompetent evidence. [Woods v. American Coal & Ice Co., 25 S. W. (2d) 144.]

It does mean however, that such hearings are not to be tried as ordinary suits in circuit court and the provision was no doubt made looking forward to the probability that neither members of the commission making the awards nor the parties to the proceedings would necessarily be lawyers. It might as well be said that if in a suit before a justice of the peace, or the probate court or county court, a litigant were advised by the judge that he would not need a lawyer, such advice would render the proceedings fraudulent no matter what the motive for such advice might have been. We have no means of knowledge as to what the motive of the commissioner making the statement, plaintiff says he made, may have been in this case. We can conceive of no other motive in making such a remark to a claimant than to save him the expense of hiring a lawyer. Moreover, the record does not show whether or not the statement was made in reply to a question or as unsolicited advice. If the latter we say it might be considered unfair if not unethical. Outside of his own testimony the evidence consisted almost entirely of medical testimony. We are unable to find in that testimony any evidence of fraud, although some of the evidence is said to be incompetent. Granting for the sake of argument that it was, it is not an unusual circumstance even in trials where clients are represented by counsel. To our minds the charge of fraud is untenable.

Claimant, through able counsel who now represents him, takes the further position, however, that under the evidence before the commission the circuit court should have declared as a matter of law that claimant was permanently and totally disabled, entitling him to all the benefits accruing under the provisions of Section 3316, Revised Statutes of Missouri, 1929. It thus appears that although claimant seems to claim that undue advantage was taken of him as to his legal right to be represented before the commission by attorneys, yet he further claims that the evidence actually taken entitled him as a matter of law to the full and complete relief, in fact the maximum relief, afforded by the Workmen's Compensation Law. It is rather an anomalous position, although it might be said that had claimant been represented by counsel, further evidence might have been brought out tending to support his claim of total and permanent disability. However that might have been, claimant's own testimony certainly supports the finding of the commission, i. e., that claimant had suffered only permanent partial disability. The term ''total disability'' as defined and understood in the Missouri Workmen's Compensation Act means ''inability to return to any employment and not merely inability to return to the employment in which the employee was engaged at the time of the accident.'' [Sec. 3306, R. S. Mo. 1929.] The evidence shows that plaintiff fell from a roof about twenty-eight feet and suffered injuries to his back and foot. He was in the hospital twice, the first time for four or

five weeks and the second time for about three or four weeks. After that he did not go back to the hospital except for some treatments. Claimant testified that he was affected all over nervously by his injuries and suffered and continued to suffer severe pain; that he had trouble controlling his urine on account of the injuries; that he suffered pain when he would step upon anything like a ladder with his right foot, which had been broken; that he lived on a farm of 209 acres near Poplar Bluff, Missouri; that his two boys and two colored men did the work on that farm; that claimant himself milks two cows twice each day and makes two trips, and sometimes three, to Poplar Bluff delivering milk to Brandon Hospital; that he also does odd chores around the farm, but is unable to perform regular farm work; that he has done one job since his injury, working half a day, but had to quit because he felt a paralyzed numbness and could not get around over the roof to any advantage; that he had also superintended a job for the Robinson Lumber Company, on the job at intervals for two days. Claimant gave further testimony as to the pain suffered and his general physical condition, more or less cumulative.

Hazel Zickefoose, plaintiff's wife, testified as to claimant's condition in part as follows: ''Besides milking, he will once in a while get a bucket of water or a little wood, just carry it. He drives the team. I have seen him try to do farm work in the field. He had to go and show the boys how to do things. He attempted to ride the disc but he couldn't; he walked behind them and showed them how to set it. It hurt him so bad that he could not ride it. Believe that was two years ago this summer, the second crop year we had.

''Before the injury he weighed around 185 to 190 pounds, now from 140 to 150.''

Dr. Kneibert testified as follows: ''Mr. Zickefoose was admitted to the hospital as falling from the top of a building on some cross ties on the ground, striking his back; he had an injury to the back, laceration of the right thumb, and an injury to the right foot. He had a compression fracture of the first lumbar vertebra and a fracture of one of the bones of the right foot which healed up and the laceration in the thumb gave him no difficulty. The most severe injury was that fracture of the first lumbar vertebra. The treatment I gave was rest in bed. I have not continued to treat him, except in a little medical illness. . . . He complained of pain in the back, and that is about all I could account for. I think his complaint of that pain is reasonable. I think he has a disability resulting from the injury. I do not know whether or not there is any connection between the compression fracture and the condition of his nerves, or the matter of frequent urination.

''Q. He complained of numbness and so forth in his legs, and I just wondered about it, whether that would be a reasonable result

of that injury or not? A. Well, I believe if it was, there would be some evidence shown in the reflexes, and there isn't any; the reflexes don't show any deviation from normal. I think he is able to do very light work, something that would not require him to do any lifting, bending or stooping. Whether he will ever be able to do that is debatable; he might; I hardly think he will. He shows no marked improvement from when he was injured, as shown from the last examination. He has improved generally from the time he was examined by me until September. He has gained in weight; handles himself better.''

On cross-examination he testified in part that, ''He can do light work. I consider his occupation, the work he has been doing, hard manual labor.

''Q. This light work, are you able to say what percentage of light work, compared with his normal work that he can do? A. He could do about one-fourth of that. I have seen cases not as severe as this, and I have seen some considerably worse. I have never seen anyone injured as this man is go back on full duty, they have gone back to some kind of work. I cannot account for his complaint of frequent urination.

''Further Examination by Referee Givens:

''I think he can do about twenty-five per cent as much work as he did before. That would figure he is disabled about seventy-five per cent, and I believe that is confined to his back. I believe that if he could climb a ladder for a while that pain in his foot would stop; but I don't see anything there that could account for it. After four years the pain should have disappeared. When I examined him the other day the movements of the foot were free in all directions. I did not take an X-ray. So far as I could tell the foot was in normal condition when I last examined it. I could not find anything objective to account for the pain of which he complained. The fracture in the bone of the foot healed without deformity or disability. He himself can only say whether he has got pain or not; there might be some exaggeration of that foot pain. I don't know about the pain in his back being exaggerated. I think his maximum disability is seventy-five per cent, it could possibly be less.''

Dr. B. J. Macauley testified that he gave claimant a thorough examination without the use of the X-ray. After deciding the nature of his back injuries he further testified that: ''I think he suffers from permanent disability. My estimate of his disability will have to be more or less elastic for the reason that I have not seen him but once, four years after the accident and injury, so I would say that his permanent disability would be somewhere in the neighborhood of fifty per cent and sixty per cent, based upon my examination. I cannot see any reason why his condition should grow worse. My opinion is that it will be stationary from this time.

There might be a slight improvement, but I can see no reason why it should grow worse. I think he has reached his maximum improvement; might be added improvement in the course of two years of, say, five per cent, but I don't think it will go beyond that. But at the same time I think he has reached his maximum disability also, due to the fact that these vertebrae are firmly anchored one to the other, the result of healing, possibly. As far as it is possible for nature to do so the first lumbar is entirely immobilized; there might be a little added amount of callous thrown out on the left side; but is almost bridged together there now.''

Dr. E. C. Funsch testified in part as follows: ''In this man's case the damage is done to the bone and the ligaments, and after the callous forms between the injured bones, which is nature's effort to fix those bones to keep them from moving, they get along fairly well, and that generally takes about a year and a half, that is, they get along fairly well; some of them can do light work, some do moderate, some of them do moderate and a little heavy work. I do not think this man is able to do unusually heavy work, and I don't think he could do anything that required continual stooping; but I do think he could do light work and moderate work. I think he could do an occasional stoop. Use of the back would not improve his back condition. The only thing, if this man could occupy himself it would improve the nervous condition, and that probably is a big factor in his disability at the present time. This man has a permanent disability, and considering the nature of the disability and what I found on physical examination, I would say that this man has a partial permanent disability around fifty per cent. I have examined cases like this for both plaintiffs and defendants for the commission.''

Examination by Referee Givens:

''I do not operate on cases like this. That is done only where there is some cord involvement causing paralysis. His legs get numb from lack of circulation I suppose. There is no nerve injury in the legs. Here is a man that I judge was an active man before he got hurt, and now he isn't very active, and his back interferes somewhat with his walking, so his legs are not used as much as they used to be; and on top of that he has this functional neurosis; but I think some of that could be overcome. As to how this may be done; well, this man has got an injury now that handicaps him from performing work he used to do. He has got to fit himself into something that he can do; he has to find some occupation that will fit in with his physical handicap, and when he does that he will be able to be more satisfied; he will be occupied. The fact that they are not occupied and worry about things is one of the biggest handicaps.''

Dr. J. W. McPheeters testified that he had examined claimant twice and took some X-rays; that ''On the first examination I found

that he had a compression fracture of the first lumbar vertebra. He made no complaint about his right foot at that time. It is possible that he may have stated to me about his foot, but not hardly probable. His chief complaint then was pain in the back and nervous condition. I found, to account for the pain, that there was a compressed fracture of the first lumbar vertebra with a slight roughening of the twelfth thoracic and the upper second lumbar. His complaints when he was examined by Dr. Funsch were very similar to the first. I noticed no improvement between the first and second examination. I did not know him before the accident. I am sure that he cannot now do the work that he did before the accident and injury. His condition is permanent; it won't get any better and won't get any worse. My experience of the condition I would say that he had from forty-five per cent to fifty-five per cent, I would say about fifty per cent disability. He is about fifty per cent of the man he was normally.''

We have set forth the material portion of all the testimony taken before the referee and the commission. Based on that testimony, as heretofore stated, the referee and afterward the full commission, found that claimant had suffered a sixty-five per cent permanent disability and allowed him $20 per week for 260 weeks or a total of $5200. We think this award was reasonable under the evidence. The case is quite similar to that of Murphy v. Lynch Company, 57 S. W. (2d) 685, where an award of fifty per cent disability was held to be sustained by the evidence. In that case the Court of Appeals held the commission would not be bound by the estimate of the physician as to the per cent of disability suffered. We agree with that statement and believe the commissioners in this case followed that principle.

It is well understood that on appeal from an award by the Workmen's Compensation Commission the courts cannot weigh the evidence. [Weiler v. Peerless White Lime Company, 64 S. W. (2d) 125.]

The evidence of plaintiff and the opinions of all the physicians based upon their examination of claimant, and their wide experience in such cases, would not justify this court nor the circuit court, in declaring as a matter of law that claimant was totally and permanently disabled. The evidence supports the award and we are bound thereby. [Glenn v. Joseph Kesl & Sons, 74 S. W. (2d) 253.]

It follows that the judgment of the circuit court herein should be reversed and the cause remanded with directions to enter a judgment confirming the award of the commission and that compensation be paid plaintiff in conformity therewith. It is so ordered. *Allen, P. J.,* and *Smith, J.,* concur.